FARMERS' LOAN & TRUST CO. v. ROCKAWAY VALLEY R. CO. et al.

(Circuit Court, D. New Jersey. July 11, 1895.)

1. EQUITY PRACTICE—OPENING DECREE—LACHES.

After a decree of sale had been duly entered in a railroad foreclosure suit, and the property advertised for sale, a bondholder applied to have the decree opened, and for leave to file an answer to the bill, and interpose certain defenses. The petitioner averred that he had first heard of the foreclosure suit after the advertisements of sale were posted; but he was directly contradicted upon this point by one witness, and impliedly by another, and it appeared, without contradiction, that the foreclosure had long been a matter of general discussion in the neighborhood where the petitioner lived. *Held,* that the petitioner had not sustained the burden of proving that he was not guilty of laches excluding him from the relief sought.

2. RAILROAD BONDS—VALIDITY—COST OF CONSTRUCTION.

Railroad bonds issued to pay for the construction of the road are not rendered invalid by proof that the road could have been, or was, constructed for less than the amount of such bonds, if the contract for its construction was fairly made and carried out, and called for the amount of bonds actually issued, and no fraud is charged in the inception or execution of such contract.

3. RAILROAD FORECLOSURE—DEFENSES—CONTRACTS OF BONDHOLDERS.

Certain bondholders of a railroad company, which was operating its road at a loss, and owed a considerable floating debt, made an agreement with a proposed lessee of the road not to seek to enforce payment of the interest on their bonds for 10 years. This agreement was unknown to the railroad company and to the trustee of the mortgage securing the bonds. It was violated by all parties to it, almost immediately, and apparently repudiated. Some of the parties to it sold their bonds without notice to the purchasers of the existence of the agreement. *Held,* that such agreement could not be interposed by a bondholder, to prevent the foreclosure of the mortgage for default in payment of interest, in a suit by the trustee of the mortgage.

This was a suit by the Farmers' Loan & Trust Company against the Rockaway Valley Railroad Company and others for the foreclosure of a mortgage. W. T. Melick petitioned to have the decree of sale opened, and for leave to file an answer. Denied.

Charles E. Hill, for petitioner.

Robert L. Lawrence, for complainant.

Flavel McGee, for First Nat. Bank of Jersey City, bondholder.

GREEN, District Judge. The Rockaway Valley Railroad Company, a corporation organized under the laws of the state of New Jersey, in the year 1890 made executed and delivered to the Farmers' Loan & Trust Company, of the state of New York, its indenture of mortgage, covering all its property and franchises, to secure certain coupon bonds given by it, in all amounting to $200,000; the trust company being, as well, the mortgagee, and the trustee for the owners and holders of the said bonds. Among other things, it was provided in and by the said mortgage that if default should be made in the payment by the mortgagor of any installment of interest as the same might become due upon said bonds, and if such default should continue for a period of 90 days, the whole principal sum of the said bonds should immediately become due and payable,

and if, after demand, the principal and accrued interest should not be paid, the trust company, as trustee, was authorized, upon the request of the holders of a majority, in value, of the bonds, to foreclose the mortgage, and cause the mortgaged premises and franchises to be sold in satisfaction of the bonded debt. It appears from the bill of complaint in this case that such default in the payment of interest has occurred; that it has continued for a long time; that the holders of more than $140,000 of said bonds have requested the trustees to take the necessary steps to protect them by foreclosure of the mortgage; and that to that end the trustee commenced an action in this court, which has progressed in an orderly and customary manner, and has resulted in a decree of foreclosure, with the usual directions for the sale of the mortgaged premises. The property covered by the mortgage has been advertised to be sold at public sale by the special master appointed for that purpose, according to law, and the sale is to take place within a fortnight. At this juncture the petitioner, William T. Melick, who is the owner of one of the said bonds, of the value of $500, but who claims in this proceeding to represent other bondholders owning bonds to the amount of $22,900, presented to the court a petition asking that the decree of foreclosure and sale heretofore made may be opened, set aside, and vacated, and that he and his associates may be permitted to enter their appearance to the action, and file an answer to the bill of complaint of the complainant, and in that way interpose two defenses: First, that there has been no such default in the payment of interest by the mortgagor as was contemplated by the deed of mortgage; and, secondly, that some of the bonds presumably represented in this proceeding by the complainant were issued without consideration, and are void as outstanding obligations.

To permit a cause which has seemingly moved in such an orderly and customary way to be interrupted at so late a stage, and at so critical a point in its progress towards a final decree, can only be justified on the ground that otherwise there would be a practical denial of justice to the petitioner, caused by the deprivation of his right to have his day in court. And it is well settled that he who seeks to obtain such interference by a court of equity must thoroughly clear himself of any suspicion of laches in making his application. The petitioner strives to do this, in the present case, by declaring that his first knowledge of this foreclosure suit was acquired after the posting of the advertisements of the sale of the mortgaged premises to be made, as stated, by the special master, and that he took his present action immediately thereafter. If this statement were uncontradicted, it would go a very great way in relieving him from charges of delay. But it is flatly contradicted,—directly by one witness who long ago conversed with him about the foreclosure,—impliedly by another; and it is in evidence, without objection, that in the neighborhood where the petitioner lives the pending proceedings for foreclosure were a common topic of conversation, and had been so for months. In view of these contradictory statements, it is not possible to say that the effect of

the petitioner to excuse his apparent lack of diligence has been successful. The burden of disproving laches was upon him. The testimony is, at least, evenly balanced, and its failure to preponderate in favor of him who must assume the burden of proof is fatal.

This conclusion would probably justify a denial of the prayer of the petition. But there are other reasons for such denial, as strong, if not stronger, than the one given. As stated, the petitioner asks for the interference of the court in his behalf at this time that he may interpose alleged defenses in bar of the foreclosure sought. These defenses are two: First, that there had been no default in payment of interest due upon the bonds; and, second, that some of the bonds represented by the complainant were without consideration, and should be canceled. As to this last allegation, it is enough to say that it is wholly unsupported by any evidence now before the court. In fact, the allegation itself is extremely vague and indefinite, and seems to be based solely upon an assumption that the railroad of the mortgagor could have been, or perhaps was, built and constructed for less than the amount of the bonds which were issued to pay therefor. If such allegation were well proved, it would not invalidate the bond issue. The only matter for investigation would be whether the contract for building and constructing the railroad was fairly made, fairly carried out, and called for the amount of bonds in payment therefor which were in fact issued. Whether the contract was a beneficial one to the company or otherwise, or whether it agreed to pay too much to the contractors for the work done, cannot now be considered. There is no charge made of fraud in the inception or execution of the contract under which the bonds in question were issued. In the absence of such allegation, as the matter now stands before the court, the issue of bonds under it must be held valid. If, however, the petitioner should be advised hereafter that any part of the bond issue is fraudulent, he will have the right to raise such question before the master, to whom all bonds must be submitted before they can participate in the distribution of the funds realized from the sale of the mortgaged premises. It is not necessary to interrupt the progress of this suit at this time to secure him that right.

The other defense which the petitioner desires to interpose rests upon peculiar grounds. It is not denied that the semiannual interest which has grown due upon the bonds in question has been in default for many months,—for years, in fact. But the petitioner seeks to avoid these many defaults by the force and effect of a certain agreement made, executed, and entered into in the year 1890 by those who were holders of these bonds at that date, whereby it was expressly agreed by them that they would waive the collection of the interest upon their bonds for a period of 10 years. This agreement has been submitted to the court. It appears from it that the Rockaway Valley Railroad Company was anything but a financial success. In the transaction of its business it was losing money every day. In 1890 one J. N. Pidcock, himself a large bondholder and stockholder, offered to lease the road, and, by close, economical operation, to relieve it of its financial troubles. Such

a lease was accordingly made. And that it might be rendered less burdensome, if possible, to the lessee, the holders of these bonds, at that time, agreed with him that they would not seek to enforce the payment of interest upon their bonds as it fell due, for 10 year; while, on his part, the lessee agreed to pay certain floating indebtedness of the company, and keep and perform certain covenants. This agreement was between the bondholders and the lessee only. The railroad company, the mortgagor, and the Farmers' Loan & Trust Company, the mortgagee and trustee, were not parties thereto, and had no knowledge of it. The agreement was not made a matter of record. No public notice of it was ever given. Practically, it was a secret agreement, binding only upon those who executed it. Some of the bondholders who were parties to it afterwards parted with their bonds, but gave to those to whom they transferred their holdings no notice of the existence of this agreement. The agreement was violated by all the parties almost immediately. The lessee failed to pay the floating indebtedness; failed to keep and perform his covenants, while the bondholders utterly disregarded their obligation. Thus it appears that upon application made by the present petitioner, who was one of the bondholders who had executed the agreement in question, the railroad company was, by the court of chancery of the state of New Jersey, decreed to be insolvent, and a receiver therefor was duly appointed, who, ousting the lessee, took possession of its property and assets. This action of this petitioner was in direct violation of the agreement in question, which, in terms, bound the bondholders to refrain from making such application. The truth seems to be that the agreement was voluntarily repudiated by all the parties to it. Under such circumstances, a court could hardly permit it to be resuscitated and used seemingly for the purposes of delay. But, if it be admitted that the agreement has yet some virtue remaining, it does not appear that it can have any force by way of defense to the present action. It was undoubtedly made for the benefit of the proposed lessee and of the railroad company. Both are parties to these proceedings. Neither ask that the agreement should be enforced. Both treat it as void in all respects. Clearly, it cannot be binding upon the present holders of the bonds, who are holders for value, without notice. How can it possibly be enforced in equity against those who had no part in its execution, who were ignorant of its very existence, who are innocent holders of the bonds, and became such by the concealment of the agreement in question by those who originally executed it? The application of the petitioner is addressed to the discretion of the court. A very clear case should be made, to secure favorable consideration. No such case has been presented, and therefore the prayer of the petition is refused, and the petition is dismissed.